I think I should have had a chart to keep these cases separate somehow, to make sure I got the right parts of the car and everything. If you have one, can you give it to me, please? Yes. Only slightly confused. I promise before I decide, I'll get unconfused. Good morning once again, Your Honors. Vince Bronco, Federal Defenders, on behalf of Mr. Lovett, and yes, I did write this brief. I did, however, on the first issue regarding the sufficiency, take that issue from another brief, and that case has been submitted. So that is the first issue regarding the sufficiency and the come-to has been submitted to another panel in U.S. v. Yasmin Munoz, and that was submitted on, I believe, February 18th. So. Who's the panel? I don't remember the actual judges, but I can give you the case number. If you could, please, yeah. 0-4-5-0-0-8-6. And the case name again is Munoz? Munoz. Munoz. United States v. Munoz. Yes. Sometimes our inventory sheets pick that up. Yeah. This one did not. Just in case I didn't include all the correct names in mine, I can tell you all the facts are from my brief. So the come-to question has been submitted to this panel. Do you know what the date of the argument? I believe the date of the argument was February 18th. 18th? February 18th. I'm not positive on that date. Okay. This is enough information for us to go on. Thanks. As to the issues that aren't before another panel, Mr. Lovett's convictions must be reversed because the government introduced irrelevant and highly prejudicial evidence that the aliens were scared to enter this compartment, and also gave a closing and rebut argument that when viewed in the entire context affect the fairness, the entire fairness of this trial. Specifically, I will discuss how, without any invitation from the defense, that the government vouched by stating its personal opinion of Mr. Lovett distorted the reasonable doubt standard and argued the theory of guilt for financial gain. Before I get that, the business about the being scared, you know, it seems to me there was no reason, but no good reason for the government to put that in. Their argument was it goes to sentencing. I mean, but, you know, that has nothing to do with what should happen in the trial. But I also couldn't see how that particular thing was harmful. I mean, you're talking about people who are in this small space near the gas tank and riding, I guess, underneath a car. I mean, if you isn't it kind of obvious they would be scared? I mean, why does that add anything? It is somewhat obvious that they're going to be scared, but you have to look at how they actually highlighted this evidence. First of all, the original material witness, the female in this case, had testified and given her direct and cross-examination. After the second material witness testified and did testify as to his fear, the prosecutor specifically recalled this witness just to testify about this fear, showing the jury that this was an important point from the government and that they wanted to specifically introduce this at trial. And that's, I believe, an excerpt of record 109 and 110 on how they just called her to specifically introduce this issue into trial. And I do think that this is bound to generate an emotional response from the jury. What was the objection that was made to this evidence? Irrelevant. Irrelevant. Both times. It is irrelevant. Was there any objection made that the prejudicial aspect of this evidence outweighed its probative value? I'm not sure if the C was. I'm not sure it was. But the basic thing is it had no relevance to this case. It had no tendency to make any other fact true, meaning, again, sentencing isn't an issue for factual guilt. And the only other excuse the government offers is that if you just say it's irrelevant, it doesn't alert the judge to precisely the problem that you're bringing to our attention now. This was prejudicial. This is damaging because 1, 2, 3, 4, 5. You failed to alert the trial judge to that issue, and you bring it to us for the first time on appeal, as far as I can tell. Well, no, because if we tell the judge that this is inadmissible for a specific purpose, relevancy, and then argue the prejudicial effect on appeal, meaning how this could have inflamed the jury, that's part of the harmless error analysis that this Court must take. What's that page where you say that she came back just to testify she was scared? Exeter Record 109 and 110. My point, Your Honor, is this. For example, say it was a hearsay objection. If you just object on hearsay, but then we come before this and say that objection should have been sustained and the Court didn't, and then we come here, we're going to have to argue the harmful effect. Your point is wrong. I'm not going to lecture you, but if you're worried about the prejudice from evidence, your primary obligation is to tell the district court, the trial court, this is prejudicial, not just irrelevant. There's a world of difference between the two. And so, you know, when we're an appellate court, we don't allow do-overs very often. So if you're afraid something is prejudicial, you say it right then and there. Fair enough, Your Honor. Not just irrelevant. I mean, see what happened to you? Now you're here on appeal scrambling for your life. And you might have been able to get the district court to say, oh, you're right, I see what you mean, counsel. But you've got to make these arguments to the trial court. I understand, and I wasn't the trial attorney. I'm stuck with the record. But the record is he did make a legitimate objection, a proper objection, and now this Court must determine whether or not, since that evidence shouldn't have come in on the basis of the objection, whether or not that error was harmless or not. Well, what was the explanation of why it's irrelevant? It's why? Or was it just objection irrelevant? It was objection irrelevant, which it doesn't go to any elements of the offense. That is correct. It's legally correct. This is just incompetent lawyering. If you want to tell a judge why something is irrelevant, you better tell him. Because, you know, you've been there. Objection irrelevant, overruled. I mean, you're in a trial court. It takes less than a second. If you're really worried about something, when you're just firing those kinds of objections, they usually don't score. Well, I do believe there's something – I do believe in discussions. I don't have the ER site for this, but there's something that her fear or the – why she's scared or fear is irrelevant to this trial. And I think combining that alerts the district court judge to the exact problem. And I can submit a 28-J finding that, because I do believe that's in the record. Not necessarily. Okay. But also, I think, based – since there was a legitimate objection on relevance, that this court has a duty to see that that was a legitimate objection and do the harmless error analysis. But I'd also like to turn to the closing argument that the government made, if there's no further questions on that issue. Because in closing argument, the government from the get-go started arguing and vouching by saying – or by saying specifically, he knew and he's guilty, repeatedly, during its opening closing and then again in its rebuttal. First of all, on Exeter Record 204 – and this is the beginning of a paragraph – he goes, he knew, ladies and gentlemen. When the jig was up, he said he was visiting somewhere, but four months later, he lives there to explain somehow, show how he got up early in the morning to negotiate this car. So he's leading with a personal belief, he knew, and the only – Why is that a standard comment on what the evidence shows? The lawyers are – the jury is always told what the lawyer says isn't evidence. And this is the way lawyers talk. I listen to it for 23 years, every day. Unfortunately, Your Honor, I just read a dissent of yours last night where you expressed that opinion, but this circuit draws a distinction. Wetherspoon never – Wetherspoon never said if you just say he knew. I understand that, but – I believe in its references to extraneous, and all this is is talking about the evidence. And what you're saying is – Is. You're saying that a prosecutor always has to say, ladies and gentlemen, from the evidence, you can determine that he knew. Ladies and gentlemen, from the evidence, or the evidence shows that he knew. You have – according to you, you have to put that in front of every sentence. That is the law of – not – if the prosecutor is going to come out and say he knew, he's guilty, he has to do something to those comments. Where's the vouching objection? The vouch – I'll agree on these. It is a plain air standard. Okay, so – It is the air. It's got to be plain air. Pardon? If he had said – Well, let's – I'd have trouble finding the vouching, let alone the plain vouching. Let's go to the third point, and this is the third time he's said it. Mr. Lovett knew. Mr. Lovett knew, and he is aiding and abetting an enterprise for profit, money for $2,000. Ladies and gentlemen, we ask you to do two things. Critically look at what they present. Is it reasonable? Don't be like my terriers off to the Red Herrings, turning your attention to this case. Mr. Gary Lovett, the defendant, is guilty, ladies and gentlemen. We ask you to find himself. There's nothing in there tying it to the evidence. Absolutely nothing. It's just repeated statements that he's guilty and he knew. This circuit requires that there be something in the argument when he's saying he knew or he's guilty that references evidence or it's a submission or anything. Instead, he's giving personal opinions. The way he ends his closing argument after rebuttal is he's guilty, ladies and gentlemen. We ask you to find him guilty of financial gain because someone's going to pay. Both of them are going to pay. We ask you to find him guilty of those counts because he didn't present those people. He's guilty, ladies and gentlemen. Another question. Can we talk about the financial gain since you're out of time? Okay. Can I ask a question? Yes. What's in the statement as to financial gain? The prosecutor repeatedly stated, and the exeter of record sites are there, that as long as the material witnesses are going to pay someone, and I think he uses the term bam, that's financial gain. Well, simply because they were going to pay someone doesn't mean that Mr. Strathman acted for the specific purpose of financial gain. And that's what's required for under the aiding and abetting theory. But what makes it worse in this case is the government never even asked for an aiding and abetting instruction. So they actually had to prove that he was going to receive financial gain as the principal. So they not only misargued what was before the jury with the jury instructions, but then also incorrectly stated the law of aiding and abetting, giving the theory that goes even further. So your theory, because they didn't charge him with aiding and abetting, your view is they had to prove that he was receiving the money. My theory is twofold. One, it was charged as aiding and abetting. It was charged as both. But the government never asked for an aiding and abetting instruction. Okay. And then, so that is one error, that they argued an aiding and abetting theory when it wasn't before the jury. But then even accepting that they could have under this, even under an aiding and abetting theory, and this is under Angwin, the individual, the aider and abetter, still would have had to act for the purpose of financial gain. So even under that theory, that person has to have that purpose. What the argument of the government was is as long as the material witness is going to pay someone, that's enough. That's not enough under the law of even aiding and abetting theory. So what do you need to be enough? That he knows that the person is going to pay. That he's acting for the purpose of financial gain. That he's acting. That he himself, the defendant, is going to make money. I believe — I think it's arguable whether or not he has to either just act for someone, for the purpose that someone does, or for his purpose. I would argue it has to be for his purpose under the law. But either way, that's not what the government argued. I couldn't find any case that said that it actually has to be for his own financial gain. There wasn't anything. I couldn't find it. Is there anything? Do you have anything on that? Yeah. I have a quote from Angwin that I can read for you. Do you have a holding or just a quote? It's the holding. It's — I don't have it with me. But it's in my brief. I'll find it in my brief. All right. Let's hear from the government, and you'll have 10 minutes. Let me just ask you one question. Is it standard practice for your office to lend your briefs to CJA lawyers? If they call to ask for issues, we do supply them. We figure it's good practice for them to — like, they'll ask us, are there any cutting-edge issues? We'll supply them. I've supplied briefs. Do you understand they're just going to copy verbatim chunks of your briefs and submit it as theirs? It depends on the issue. I mean — Do you think that's appropriate? That's not a rhetorical question. Again, it depends on the issue. Meaning, for example, in this case, the bring-to issue, most of that is a purely legal argument that applies across the board. So, I mean, I can tell you I used someone else's brief for that and just plugged in the facts of this case. I think that — but if it's prosecutorial misconduct stuff, I think, no, they should be writing their own stuff. Okay. Thank you. Let's hear from the government. You can look up that quotation, if you can find it, in the Englund case. Good morning, Your Honors. My name is Richard Chang, and I was the trial counsel for the government on the U.S. v. Leather case. Let me first apologize to the Court for my typographical errors within my response. I should say that I saw some when I reviewed my brief just again last night. But let me get to the point about those comments, those limited comments that were regarding how they felt when they saw that hole, that hole that they were told to get into in order to be smuggled into the United States. Now, let me first also present that picture of that hole where those individuals were located. This was omitted as — I'm sorry, Government's Exhibit No. 10. Now, when we asked that question, we asked, well, what went through your mind? And the limited response was, well, it was small. It was, I got scared because of it. And that was it. The government never mentioned it again. The government never mentioned it at closing arguments, both the opening or the close. And it didn't even touch it. And the reason why we asked it, quite frankly, is because of cross-examination. Ms. Gatlin, the trial attorney for the defense, asked about the hole, asked about getting into the hole,  all we wanted to get is to — for those witnesses to say what went through their mind. And it goes to specifically, and most importantly, the fact that they were desperate and that they were illegal aliens. Recall, one of the most important things that the government has to prove regarding those illegal aliens are just that, that they are illegal aliens. Ms. Tinoco says that she not only tried once by just falsifying records or bringing records that were false, she tried again before she decided to do this, to secrete herself into this hole. So certainly, that goes toward that proof that the government is required to show that they were indeed illegal aliens. It also goes toward the fact that we need to prove that this gentleman, Mr. Lovett, was in reckless disregard of that fact, that he would even take a car, drive this car with two people basically riding on a ledge under the undercarriage of this particular car. It's still irrelevant. You know, what's relevant is where they were in the position, in the car, not how they felt about it. And at this point, I absolutely agree. However, I want to make sure this Court realizes that it was very limited, one line, one question, one line, one question. The government never touched it again. No, it was not one line. It was short. You asked the question. He successfully argued irrelevance. The judge sustained it. You asked it again, and the judge overruled it. You asked it twice, and you succeeded the second time around. It takes less than a full transcript page in which to do it. But you persevered after the judge first sustained the objection. I should say that when the – when this particular issue was brought up, it was brought up after cross-examination. I understand that. And I know that there was a part of the particular material witness who was crossed specifically on that whole and was in fact confronted with the videotape of that interview. Let me move on to vouching. And my hope is that I have been clear that I didn't see any vouching in this case. Now, when I say the word I, I mean when I look at it. When I use the word he knew, he did this, or he lied about this, it was all about Mr. Lovett. And what the government or what I was commenting on specifically was what Mr. Lovett said to the primary inspector. He said, this is my car. I just bought it. I just bought it, but I haven't registered it in my name. I'm – I'm coming back from Mexico after visiting friends in Playa or Las Playas. But yet, when the defense puts on a case, and again, they don't have the burden to do so, but they decided to do so, what did they put on? They put on a person who rented a residence to Mr. Lovett in Mexico. Establishing what? That he lives in Mexico. Then they put on a casual employer, meaning that he gives piecemeal work to Mr. Lovett. What was that about? That was to say that at 6 o'clock in the morning, he's going to work. He's crossing from his home in Mexico into the United States. Well, that means he's not visiting friends, is he? He's living there. So it is, I think, incumbent on the United States, when they see a defense case, to be able to get up in front of a jury and say, hey, this doesn't make sense now, does it? Apply your own common sense and look at what is reasonable here. Is it more reasonable than not that, in fact, that he knew? Is it more reasonable than not that he knew because we have showed that he lied or, at minimum, it was inconsistent? That's what the government did. We didn't say – But what you're saying now to us is not what you've said in front of the jury. You might as well deal with what you said. You didn't say, you know, use your common sense, think about it, is it more likely there's a more reasonable – you know, da-da-da-da-da. You just said he knew, he knew, he knew. The question is, is that all right to say? Well, we – if I may be clear, we did say what is more reasonable. We did say – and we have the cites within the response as well. Look at what is reasonable. Look at those two particular – But also, when he – when the government says he knew, it was all about his statement. It was all about what he said to the primary inspector. And for the government not to be able to comment on that in conjunction with and in opposition to the defense case, I think, is inappropriate. We just – Nobody's telling you you can't comment on it. It's how you comment on it. Well, let me first dispute that there is a requirement or the law or the rule that says the government has to – You're working hard to snatch defeat from the jaws of victory. You know that? I understand. And I'll stop at this point, but – Say what you want. Let me just say that there's no rule that says I have to preface every statement by I submit or the government submits. You better read Rutherspoon, then, and you're in the Ninth Circuit. I believe it's safer, absolutely. But, you know, we're there to be advocates, we're there to be persuasive, and we did not or I did not say I know that he's guilty or the government wouldn't bring this case if he were not guilty. That's what vouching is all about. Nor did we – Shakespeare wrote a line about your argument. Somebody doth protest a little too much. Actually, I'd like to get to an issue that maybe you won't be so excited about because I'm going to get scared in a minute. I want to talk about this financial gain business. And it seemed to me, it was very confusing to me what you were saying about financial gain and if anything you were saying about financial gain was true in terms of what has to be proven. Well, let me try to be more clear and articulate at this point now. I didn't say you weren't clear. You're just scary. What we believe – what I believe we did say and what I believe is in fact the law is that Mr. Lovett or the government does not have to prove that Mr. Lovett was expecting or did get any money, any financial gain or any commercial advantage for himself for doing this. What I believe I said and what I believe is in fact the law is that if you do something knowingly, even though you don't get money for yourself, but someone gets money. Someone gets financial gain. Someone gets commercial advantage. And you know about it. It's not like you're just helping and somehow someone else gets paid for it. But you know about it. You have committed this particular crime. Crime becomes a crime for financial gain. Do you have a case that says that?  Well, I think they cited St. Angwin just a moment ago, which does not say that it requires that the person who does this, that smuggles the people in by driving the car, needs to expect money for themselves. In fact, it just says specifically that the government can prove a person aided and abetted the transportation or I should say the smuggling in of an illegal alien for his private commercial advantage or private financial gain, even if the government does not prove that he expected to get any money. Now, Judge, can I ask you a question, which is, do you have a case that states the law as you say you believe it to be? That is to say, do you have a case that says it is enough that he knows that somebody else is going to make money on this? Right now, the answer is no. I can provide that in a 28-J. I believe that Angwin says that. Right now, you've been through trial, we're on appeal, and you don't yet have a case on that point. I don't have a case to give you on that particular point. Can you help me out a little more here? I can understand, even though there may not be a case on point, that if you're proving aiding and abetting that the money is going to somebody else and he's aiding and abetting the smuggling for financial gain of somebody else. But if there's no aiding and abetting instruction in this case, how are we getting there? Certainly, aiding and abetting is charged on all four counts. The fact that we did not ask for an aiding and abetting does not preclude, I think, the government from arguing that, especially when it's charged. Beyond that, in this instance, certainly there is a clear understanding that the government doesn't exactly know how this occurred based on the evidence. It doesn't know whether Mr. Lovett specifically contracted. And clearly as that, Mr. Lovett could have been a principal as well, because he could have been, in fact, the person that was standing there negotiating to particularly drive us, knowing that there were irregularities. So you charged aiding and abetting. You didn't get an aiding and abetting instruction. But then you kind of argued this, I think, as if you had an aiding and abetting instruction. When you're arguing, he doesn't personally have to get the money himself. Yes. Okay. Now, was there any objection to you doing that? No. So that just kind of passed over. Well, I think they objected. Did they object to you doing that? I don't believe they objected, although I don't know. I don't recall for sure. They certainly object within the appeal itself now by saying it was illegal. Well, I mean, at the time of the argument, they didn't stand up and said, you know, this wasn't charged, or this, the judge didn't charge it this way. Well, we did. That's correct. It was not instructed that way, necessarily. It was, however, charged that way. I don't recall a specific objection to that at that particular point. The indictment says aiding and abetting.  And I think they've omitted, the defense has omitted that. And, in fact, I should state in the Russian case that this Court heard this morning as well, the aiding and abetting issue I think was brought up specifically in the context of the 1324 case. And in that particular government-responsive brief, aiding and abetting is a theory of liability that does not have to be, in fact, charged specifically within the indictment. We did so in this case, certainly.  But this is the flip. That is to say, it's been charged in the indictment. Correct. But the jury has not been instructed that that's permissible theory of conviction. Well, that's right. And, you know, the government's position is, quite frankly, is that we don't know whether he's a principal or whether he is a aider and abetter. We certainly argue both. There may be some law on this, but as I sit here, I'm not sure what it is. What do you do if it's in the indictment, and under a proper instruction, they clearly could have convicted under aiding and abetting, but they were not so instructed? The only way in which they were instructed was they had to indict him as a principal. Well, I don't think there's a specific instruction that instructs a jury to find him guilty as a principal as opposed to an aiding and abetting. Certainly, however, there is an affirmative instruction for aiding and abetting. Does the statute say anything about who has to be getting the money? No. So it's just a crime. For private financial gain or commercial gain. That's right. And unless the Court has any further questions, I won't protest any further. Thank you. What's Angwin say? Angwin says, which is an aiding and abetting case, quote, to be given. Where are you? I've got the case, but locate me within the time limit. That's page 805. Okay. Now this is going to be one of these darn things where I've got to find the. It's going to take me a second, and it's not your fault. 805. Okay. I'm on page 805. And then where are we? I don't know where you're going to have to look within, but I have the quotation, which is to be guilty under section 1324A2BI, a defendant must commit the offense for the purpose of commercial advantage or private financial gain. Angwin's an aiding and abetting case. It clearly says it there. What he argued is clearly different. To me, it's not clearly different. I don't think Angwin answers. First of all, it's an aiding and abetting case. So to me, it doesn't clearly answer the issue. I didn't think it did. And I still don't think it answers it clearly for him or clearly for you. The other side says you didn't make this objection in the trial court. Is that right? Right. That is correct. But I do want to comment on one of his statements. That is, he agreed. What he is trying to do is urging the jury to apply their own common sense. And this is an argument from page excerpt of record 226. And if it enters your mind, well, it could have been this. Well, maybe they were followed. Maybe they didn't care. Maybe they didn't care about being paid. Maybe they didn't care about them dying. When you hear the word maybe enter your minds, ladies and gentlemen, that maybe, when it's not connected to any evidence whatsoever that you've heard from the mouth of Ms. Gatlin, who is the trial attorney, is merely speculation. There was an objection at that point. That mere speculation is not reasonable doubt. Basically what the prosecutor is telling him there is if you have to use your common sense to say maybe this vehicle was being followed, which is, you know, something that this Court has accepted, that, you know, sometimes these vehicles are followed and that's how they get unknowing dupes to do this. He's saying you can't consider that. And that's just in looking at this entire context of this closing argument. What the prosecutor did was he stated he knew. He knew that this vehicle was being followed. And he was not going to use any evidence to convince any argument in correct theory. OK, thank thank both sides for their argument. The case of United States versus Levitt is now submitted for decision. The next case on the calendar has been submitted on the briefs. That case is United States versus Martinez Vasquez. The last case on the argument calendar this morning is Young versus Duncan. Three strikes.
judges: Trott, W. Fletcher, Restani